LYNN ROSSMAN FARIS (State Bar No. 096029) lfaris@leonardcarder.com
PHILIP C. MONRAD (State Bar No. 151073) pmonrad@leonardcarder.com
ELEANOR I. MORTON (State Bar No. 220407) emorton@leonardcarder.com
JENNIFER KEATING (State Bar No. 250857) jkeating@leonardcarder.com
LEONARD CARDER, LLP
1330 Broadway, Suite 1450
Oakland, CA 94612
Telephone: (510) 272-0169
Facsimile: (510) 272-0174

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA

PAULA LABRIE, ALFREDO MACIAS,
PETER MILLMAN, TOM CHORTABTIM,
RAF SISON

           Plaintiffs,

    v.

UPS SUPPLY CHAIN SOLUTIONS, INC.

        Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.  3:08-CV-03182-PJH

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CONDITIONAL CLASS CERTIFICATION AND NOTICE AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169   FAX: (510) 272-0174

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CONDITIONAL
CLASS CERTIFICATION AND NOTICE AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF

Case No. 3:08-CV-03182-PJH

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................ 1

I.     STATEMENT OF THE ISSUES ........................................................... 1

II.    STATEMENT OF FACTS ..................................................................... 3

    A.     The Parties .................................................................................. 3

    B.     Procedural History .................................................................... 5

    C.     Plaintiffs and Putative Class Members Have All Been Misclassified as "Independent Contractors" by SCS, Share the Same Job Duties and are All Denied Overtime And Minimum Wages Under the FLSA .......................... 5

        1.   SCS Uniformly Classifies its Drivers as "Independent Contractors." ................................................................................ 5

        2.   The State of California Considers All SCS Drivers to Be Employees. ................................................................................ 6

        3.   All Drivers Must Sign a Standard, Non-Negotiable Contract .......... 7

        4.   All Drivers Perform the Same Job Duties Assigned by SCS Dispatchers Subject to the Same Controls. ...................................... 8

        5.   UPS SCS' Dispatch and Payroll Department are Organized Regionally. .............................................................................. 11

        6.   UPS SCS Pays All Drivers the Same Way and Uniformly Denies All Drivers Compensation for Return Travel, Waiting Time and Overtime. .............................................................................. 12

        7.   SCS Requires All Drivers to Provide a Vehicle and Pay for Their own Gas, Maintenance, Repairs and Insurance. ........................... 13

        8.   Drivers Work for Full-time for SCS, Often for Many Years, and Depend on SCS for Their Livelihoods. ....................................... 13

III.   ARGUMENT ....................................................................................... 13

    A.     The Court Must Apply a "Lenient Standard" and Resolve All Doubts in Plaintiffs' Favor. .......................................................................... 13

    B.     Plaintiffs Have Amply Meet the Lenient First-Step Conditional Certification Standard. ................................................................. 17

    C.     The Court Should Order SCS to Provide Plaintiffs a List of the Names and Addresses of Putative Class Members to Facilitate Notice. ........... 20

    D.     Plaintiffs' Proposed Notice and Opt-In Form Are Fair and Adequate ....... 20

IV.    CONCLUSION .................................................................................... 21

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169   FAX: (510) 272-0174

i

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CONDITIONAL
CLASS CERTIFICATION AND NOTICE AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF

Case No. 3:08-CV-03182-PJH

1

**TABLE OF AUTHORITIES**

2

**Federal Cases**

3

*Adams v. Inter-Con Sec. Sys.,*
    424 F.R.D. 530 (N.D. Cal. 2007) ........................................................................ 14, 15, 16

4

5

*Aguayo v. Oldenkamp Trucking Co,*
    Case No. CV F 04-6279 ASI LJO, 2005 WL 2436477
    (E.D. Cal. Oct. 3, 2005) ................................................................................ 14, 15, 16, 18

6

7

*Allen v. Mcwane,*
    Case No. Civ.A.2:06-CV-158, 2006 WL 3246531
    (E.D. Tex. Nov. 7, 2006) ........................................................................................................ 19

8

9

*Ballaris v. Wacker Siltronic Corp.,*
    Case No. 00-1627, 2001 WL 1335809 (D. Or. Aug. 24, 2001) ........................................ 15

10

*Beauperthuy v. 24 Hour Fitness USA, Inc.,*
    Case No. 06-715 SC, 2007 WL 707475 (N.D. Cal. Mar. 6, 2007) ................ 15, 16, 18, 19

11

12

*Camper v. Home Quality Mgmt., Inc.,*
    200 F.R.D. 516 (D. Md. 2000) ........................................................................................ 15

13

*Champneys v. Ferguson Enterp., Inc.,*
    Case No. IP 02-535-C, 2003 WL 1562219 (S.D. Ind. Mar. 11, 2003) ............................ 19

14

15

*Gerlach v. Wells Fargo & Co,*
    Case No. C 05-0585 CW, 2006 WL 824652 (N.D. Cal. Mar. 28, 2006) ........................ 18

16

*Gieske v. First Horizon Home Loan Corp.,*
    408 F. Supp 2d 1164 (D. Kan. 2006) ........................................................................ 16, 20

17

*Guzman v. Varco Intern., Inc.,*
    Case No. Civ.A H-01-4000, 2002 WL 32639237 (S.D. Tex. May 30, 2002) ................ 15

18

19

*Hipp v. Liberty Nat'l Life Ins., Co.,*
    252 F.3d 1208 (11th Cir. 2001) ................................................................................ 14, 16

20

*Hoffman-LaRoche v. Sperling,*
    439 U.S. 165 (1989) ........................................................................................ 2, 3, 14, 20

21

*Horne v. United Serv. Auto. Ass'n,*
    279 F. Supp. 2d 1231 (M.D. Ala. 2003) ........................................................................ 16

22

23

*Lee v. ABC Carpet & Home,*
    236 F.R.D. 193 (S.D.N.Y. 2006) ..................................................................................... 17

24

*Leuthold v. Destination Am., Inc.,*
    224 F.R.D. 462 (N.D. Cal. 2004) ........................................................................ 14, 15, 16

25

*Lewis v. ASAP Land Express, Inc.,*
    Case No. 07-2226-KHV, 2008 WL 2152049 (D. Kan. May 21, 2008) ............................ 17

26

*Montoya v. S.C.C.P. Painting Contractors, Inc.,*
    Case No. CCB-07-455, 2008 WL 55114 (D. Md. Feb. 26, 2008) .................................... 17

27

28

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169  FAX: (510) 272-0174

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CONDITIONAL
CLASS CERTIFICATION AND NOTICE AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF

Case No. 3:08-CV-03182-PJH

*Mooney v. Aramco Servs., Co.*
   54 F.3d 1207 (5th Cir. 1995)................................................................. 15, 16

*Real v. Driscoll Strawberry Assocs., Inc.,*
   603 F.2d 748 (9th Cir. 1979).......................................................................... 6

*Rees v. Souza's Milk Transp. Co.,*
   Case No. CVF05000297, 2006 WL 738987 (E.D. Cal. Mar. 22, 2006)............... 15, 18, 19

*Severtson v. Phillips Beverage Co.,*
   141 F.R.D. 276 (D. Minn. 1991).................................................................... 15

*Thiessen v. GE Capital Corp.,*
   267 F.3d 1095 (10th Cir. 2001)..................................................................... 16

*Williams v. Sprint/United Mgmt. Co.,*
   222 F.R.D. 483 (D. Kan. 2004)...................................................................... 16

*Wynn v. Nat'l Broadcasting Co.,*
   234 F. Supp. 2d 1067 (C.D. Cal. 2002) .......................................................... 14

**California State Cases**

*Air Couriers International v. Employment Development Department,*
   150 Cal. App. 4th 923 (Ct. App. 2007) ........................................................ 6, 19

**Statutes**

Fair Labor Standards Act, 29 U.S.C. § 206 ....................................................... 2

Fair Labor Standards Act, 29 U.S.C. § 207 ....................................................... 2

Fair Labor Standards Act, 29 U.S.C. § 216(b) ........................................... 1, 13, 14

Fair Labor Standards Act, 29 U.S.C. § 255 ....................................................... 2

Fair Labor Standards Act, 29 U.S.C. § 256 ...................................................... 14

**Rules**

Federal Rules of Civil Procedure, Rule 23............................................... 14, 15

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169   FAX: (510) 272-0174

iii

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169   FAX: (510) 272-0174

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND COUNSEL OF RECORD:

Please take notice that on March 18, 2009 at 9:00 am, in the courtroom of the Honorable Phyllis J. Hamilton of the above-mentioned Court, Plaintiffs Paula LaBrie, *et al.*, will and hereby do move for an order conditionally the Plaintiffs class pursuant to 29 U.S.C. § 216(b). This motion is based upon this notice of motion and motion, the points and authorities below, the accompanying Declaration of Eleanor Morton ("Morton Dec.") and exhibits thereto, the accompanying Request for Judicial Notice and exhibits thereto and the other pleadings on file.

Plaintiffs seek an order (1) conditionally certifying this case as a collective action pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b) and allowing notice to issue to the class, (2) requiring Defendant UPS Supply Chain Solutions, Inc. ("SCS") to produce a complete class list to facilitate the issuance of notice and (3) approving Plaintiffs' proposed notice and opt-in form filed herewith.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   STATEMENT OF THE ISSUES**

Plaintiffs[1] currently work or previously worked as pickup and delivery drivers for Defendant SCS, a national corporation and division of United Parcel Service ("UPS"), which provides expedited, often same-day, pickup and delivery services for its business customers. Although all of UPS' other far-larger divisions exclusively use employee drivers to perform the same work, and despite the facts that SCS controls precisely how Plaintiffs' work is done and that the work is integral and essential to SCS' core business, SCS has nonetheless uniformly

---

[1] For purposes of this motion, the five drivers who filed this action are referred to as "Named Plaintiffs." The Named Plaintiffs and all those drivers whose consents to sue have been filed in this action are included in the term "Plaintiffs."

misclassified Plaintiffs and all of its delivery drivers as "independent contractors." Through this sham "independent contractor" arrangement, SCS uniformly deprives its drivers of the minimum wages and overtime compensation to which they are entitled under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206, 207, 255(a). [2]  Named Plaintiffs seek to recover those unpaid wages for themselves and for other SCS drivers who are similarly situated.

With this motion, Plaintiffs ask the Court to take the first step and conditionally certify this case as a collective action under the lenient standard in *Hoffman-LaRoche v. Sperling,* 439 U.S. 165 (1989), intended to facilitate collective litigation so as to broadly and efficiently enforce the important rights guaranteed by the FSLA.  In support of this motion, Plaintiffs offer their Second Amended Complaint ("SAC"), SCS' own advertising materials, non-negotiable contracts and memoranda to drivers, as well as declarations from all Named Plaintiffs and twenty-five consenters and putative class members who have worked for SCS in twenty different states across the country.  *See* Morton Dec. Exhs. 1-2. [3]

---

[2] To determine whether SCS drivers are employees or independent contractors, this Court ultimately will have to apply the "expansive" economic realities test. *Real v. Driscoll Strawberry Assocs., Inc.,* 603 F.2d 748, 754 (9th Cir. 1979).  Under this test, which is intended to "effectuate the broad remedial purposes of the [Fair Labor Standards] Act," the Court must disregard the label used by the parties and consider the totality of the relationship, including:

> 1) the degree of the alleged employer's right to control the manner in which the work is to be performed; 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; 3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; 4) whether the service rendered requires a special skill; 5) the degree of permanence of the working relationship; and 6) whether the service rendered is an integral part of the alleged employer's business. *Id.*

[3] All declarations from SCS drivers appear at Exhibit 2 to the Declaration of Eleanor Morton, filed herewith.  For ease of reference, the subject matter addressed in each paragraph of each driver declaration is uniform.  Throughout this brief, Plaintiffs cite to all of the driver declarations collectively in support of multiple facts and, when doing so, cite to all driver declarations collectively as Exhibit 2, followed by the paragraph number which addresses the relevant subject matter in all of the driver declarations submitted.  *E.g.,* Morton Dec. Exh. 2 ¶1. When Plaintiffs cite to fewer than all of the driver declarations in support of a statement, Plaintiffs identify the specific declaration, followed by the relevant paragraph number and, if

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CONDITIONAL
CLASS CERTIFICATION AND NOTICE AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF

Case No. 3:08-CV-03182-PJH

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169   FAX: (510) 272-0174

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169   FAX: (510) 272-0174

The evidence garnered even at this early stage of the litigation demonstrateS that SCS is a nation-wide company that operates the same way from coast to coast and that SCS' drivers are not separate, distinct businesses, but are essential to SCS' core operations and are economically dependent on SCS.  As detailed herein, SCS drivers across the country are uniformly classified as "independent contractors," sign the same contracts, are subject to a uniform dispatch system, must follow the same dispatch and delivery rules, use the same SCS-supplied forms and are paid the same way.  By company policy, they receive no pay at all for waiting time and return travel and receive no overtime pay, despite routinely working more than 40 hours per week.  Morton Dec. Exh. 2 ¶¶ 2, 6-20.  SCS drivers do not set the rates charged by UPS for their services or have any say in the rates they are paid, do not regularly work for other delivery services or customers, and are not free to pick their own assignments without severe consequences.  *Id.* ¶¶10, 13, 17, 19. There is simply no good reason why these drivers may not litigate the common issues of fact and law in this case in a collective action.  Plaintiffs' allegations and evidence are more than adequate to show that all SCS drivers are "similarly situated" under the lenient *Hoffman-LaRoche* conditional certification standard.

## II.   STATEMENT OF FACTS

### A.   <u>The Parties</u>

The Named Plaintiffs are five former SCS drivers who worked out of various SCS warehouses in California picking up and delivering packages for SCS and its customers.[4]  One hundred thirty-eight additional Plaintiffs have opted into this litigation to date.  They are current

---

relevant, the name of the declarant and the abbreviation for the state where s/he performed most of his/her work for SCS.  *E.g., id.* Exh. 2-1 ¶1 (Chortabtim-CA).

[4]   Effective March 29, 2008, SCS unilaterally terminated the Named Plaintiffs and all of its California drivers.  *See* Morton Dec. Exhs. 2-1 through 2-5, 2-8, 2-12, 2-13, 2-15 ¶¶23; Exh. 2-5 exhibit H thereto (letter from SCS to all drivers announcing state-wide terminations).

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CONDITIONAL
CLASS CERTIFICATION AND NOTICE AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF

Case No. 3:08-CV-03182-PJH

and former SCS drivers from all over the nation, including California, Florida, Texas, Kentucky,

Minnesota, Pennsylvania, Washington, New Jersey, New York, Washington D.C., Oregon,

Nevada and Virginia. *See* Dkt. 5-7, 9-13, 15-17, 22-23, 25, 28, 36, 38, 41, 46-47, 51, 53-55, 58.[5]

As set forth in the SAC, the Named Plaintiffs seek to represent a class of approximately 1,500

SCS drivers consisting of:

> All persons in the United States who perform or performed delivery services for
> Defendant UPS Supply Chain Solutions, or for its predecessor entities, as
> purported "independent contractors" and who file written Consents to Become
> Party Plaintiffs in this Action, for the period commencing three years prior to
> filing of such Consents.

SAC ¶14, Dkt. 49.[6]

SCS is a nation-wide specialized business unit within the United Parcel Service's family

of transportation businesses. It operates a single, international, integrated network of

transportation, warehouse and communication facilities, providing logistics management and on-

demand, expedited package pickup and delivery for business customers. SAC ¶23; Morton Dec.

Exh. 1. SCS' website advises potential customers:

> UPS Supply Chain Solutions offers ***a single source to manage your global
> transportation and freight***, giving you the capacity to extend your business reach.
> Our experienced staff can design effective solutions for your company using a vast
> network of transportation modes…. [¶] Count on UPS to provide ***effective
> transportation and freight management***, including comprehensive LTL (less-
> than-truckload) and truckload services.

Morton Dec. Exh. 1 at 2 (emphasis added). SCS specifically advertises the "Specialized

Services" it provides through courier drivers like Plaintiffs. *Id.* at 3 (*e.g.,* describing "Constant

Surveillance" performed by drivers to secure an SCS customer's freight and "Signature Security

---

[5] These drivers have worked in many other states for SCS as well as the states in which
they reside and thus can and do provide a proper basis for conditional certification of a nation-
wide class. *E.g.,* Morton Dec. Exh. 2-9 (worked in CA and NV); Exh. 2-16 (worked in KY, IN,
OH, OK and TX); Exh. 2-26 (worked in TX, PA, MD and NJ) ¶¶3.

[6] SCS has stipulated that the statute of limitations is tolled for sixty additional days for
those who sign consents after the filing of this motion. Stipulation and Order, Dkt. 57 (11/25/08).

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169   FAX: (510) 272-0174

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CONDITIONAL
CLASS CERTIFICATION AND NOTICE AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF

Case No. 3:08-CV-03182-PJH

Service" performed by drivers to document "proof of custody from origin to destination.").

These services and SCS' core business function of transporting items for SCS customers with

real-time tracking of the delivery process are performed nation-wide by drivers like Plaintiffs and

members of the putative class, whom SCS contends are "independent contractors."  On this basis,

SCS contends they are all excluded from numerous statutory protections applicable to employees,

such as the FLSA at issue here.  SAC ¶¶8, 14, 35; Morton Dec. Exh. 1, Exh. 2 ¶7.

> **B.**    **Procedural History**

Plaintiffs filed the instant action on July 2, 2008 and filed an amended complaint on

August 6, 2008.  *See* Dkt.1, 14.  On August 25, 2008, SCS moved to dismiss Plaintiffs' common

law fraud claim, which motion the Court granted on October 3, 2008.  *See* Dkt. 18, 35.  Plaintiffs

filed a Second Amended Complaint on October 20, 2008, which SCS answered on November 3,

2008.  *See* Dkt. 49, 52.  The Court conducted a status conference and set a case schedule on

October 30, 2008.  *See* Dkt. 50.  Discovery has barely begun.  SCS has scheduled Plaintiffs'

depositions and requested documents from them and Plaintiffs will soon serve SCS with their

initial document request.  Morton Dec. ¶2.

> **C.**    **Plaintiffs and Putative Class Members Have All Been Misclassified as "Independent Contractors" by SCS, Share the Same Job Duties and are All Denied Overtime And Minimum Wages Under the FLSA**

>> **1.**    **SCS Uniformly Classifies its Drivers as "Independent Contractors."**

SCS considers Plaintiffs and all of its pickup and delivery drivers nation-wide to be

"independent contractors." [7]  SAC ¶¶3, 8, 37.  SCS admits to this uniform "independent

contractor" designation in its Answer to Plaintiffs' Second Amended Complaint.  *See* Answer to

SAC ¶¶3, 8, 37, Dkt. 53.  While Plaintiffs contend that this classification is a sham intended to

avoid SCS' legal obligations to its workforce and SCS claims the classification is valid, there is

---

[7] While Named Plaintiffs and some putative class members are former SCS drivers, the present verb tense is used in this brief with reference to all drivers.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CONDITIONAL
CLASS CERTIFICATION AND NOTICE AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF

Case No. 3:08-CV-03182-PJH

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169   FAX: (510) 272-0174

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169   FAX: (510) 272-0174

no dispute that the classification is common to Plaintiffs and all members of the putative class.

### 2.   The State of California Considers All SCS Drivers to Be Employees.

The California Court of Appeals has already determined the employment status of SCS

drivers as a group.  In *Air Couriers International v. Employment Development Department*, 150

Cal. App. 4th 923 (Ct. App. 2007), the court of appeals reviewed the determination of the

California Employment Development Department ("EDD") regarding the lawful status of SCS

drivers.  (Before becoming SCS, the company was previously known as Air Couriers

International, and then later Sonic Air before being purchased by UPS.)  The *Air Couriers* court

upheld the EDD's determination that all SCS drivers were employees of SCS, not independent

contractors as the company claimed, and therefore were eligible for unemployment compensation.

*Air Couriers,* 150 Cal. App. 4th at 937-39.

The factors used by the court to determine the employment status of all drivers in *Air

Couriers* are substantially the same as those that will be used to determine employment status

here.  *Compare id.* (evaluating, *e.g.*, the extent to which the company controlled how the drivers

performed their work and whether drivers were integral to Sonic Air's operations) *to Real*, 603

F.2d at 755 (under economic realities test applicable to determining employment status under the

FLSA, court must consider, *e.g.*, the company's "right to control the manner in which the work is

performed" and "whether the service rendered is an integral part of the alleged employer's

business").  It follows that this Court too can and should determine the employment status of SCS

drivers as a group.  While SCS claims that its predecessor Air Couriers was somehow "different,"

review of the Court of Appeals decision shows that the basic terms and conditions under which

drivers worked do not appreciably differ from those that prevail today.  *Compare* 150 Cal. App.

4th at 926-31, 937-39 *to* II.C.1*supra* and 3-5 *infra*.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CONDITIONAL
CLASS CERTIFICATION AND NOTICE AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF

Case No. 3:08-CV-03182-PJH

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169   FAX: (510) 272-0174

### 3.    All Drivers Must Sign a Standard, Non-Negotiable Contract.

SCS requires all drivers to execute a standard, adhesive form agreement, which sets forth the relationship between SCS and its drivers and their pay structure in uniform and non-negotiable terms.  Morton Dec. Exh. 2 ¶6.[8]  SCS gives the drivers the contract as a complete document.  *Id.*  They have no ability to negotiate any of the provisions, including their rates of pay, and have not done so.  *Id.*  Multiple drivers have been told by managers that all drivers sign the same contract.  *Id.* Exh. 2-6 ¶6 (Adindu-TX), Exh. 2-16 ¶6 (Harilson-KY), Exh. 2-18 ¶6 (Lee-FL); *see also* Exh. 2-27 ¶6 (Stickney-MN, testifying that he saw other drivers' contracts and they were the same as his).  As the declarations filed herewith show, in fact drivers from states across the nation have had to sign identical agreements, all drafted by SCS.  *E.g., compare id.* Exh. 2-5, exhibit A thereto (Sison-CA) *to* Exh. 2-26, exhibit A thereto (Quigley – PA) *to* Exh. 2-19, exhibit A thereto (Maharaj, R.-FL) *to* Exh. 2-21, exhibit B thereto (Marshall-MN).

Over time, SCS has required drivers to sign different versions of the agreement, but the distinctions from one version to the next are miniscule.  The only differences between the 2001 versions of the agreement and the 2002 version were the substitution of the term "supplier" for the term "contractor" and some minor variations to the addenda.  *Compare* 2001 Contracts (appearing at *id.* Exh. 2-12 exhibit B thereto [Coffman-CA]; Exh. 2-18, exhibit A thereto [Lee-FL]; Exh. 2-27 exhibit A thereto [Stickney-MN]) *to* 2002 Contracts (appearing at Morton Dec. Exh. 2-14 exhibit A thereto [Dowdy-KY]; Exh. 2-21 exhibit A thereto [Marshall-MN]).  With the 2004/05 version[9] of the agreement, provisions were rearranged, but the essential terms remained

---

[8] The contracts given to and signed by Plaintiffs are attached as exhibits to the driver declarations filed herewith at Exhibit 2 to the Morton Declaration.

[9] The only differences between the 2004 and 2005 versions of the contract are the removal of language permitting immediate termination "upon review of Contractor's driving record or the results of Contractor's background check" (§15 of the 2004 Contract) and the removal of an editorial footnote that appears to have been left in the document by mistake (§18 n.1).  *Compare*

7

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169 FAX: (510) 272-0174

the same. For example, in every version of the contract, drivers must agree to provide "such pickup/delivery services and/or parts exchange services … as may be requested" by SCS. *Compare* 2004/2005 Contracts §1 (*e.g.,* appearing at Morton Dec. Exh. 2-5 exhibit A thereto) *to* 2002 Contracts §1 (*e.g.,* appearing at Morton Dec. Exh. 2-21 exhibit A thereto) *to* 2001 Contracts §1 (*e.g.,* appearing at Morton Dec. Exh. 2-27 exhibit A thereto). In exchange, SCS agrees to pay a certain amount for each delivery, according to a standardized formula based on mileage. *Compare* 2004/2005 Contracts §6 and Exh. B *to* 2002/ 2001 Contracts §3 and Schedule A. The contracts set forth specifications for how the work is to be performed. *Compare* 2004/2005 Contracts Exh. C *to* 2001/ 2002 Contracts Schedule B. They are terminable without cause upon notice. *Compare* 2004/2005 Contracts Exh. A §15 *to* 2002/ 2001 Contracts §8.

### 4. All Drivers Perform the Same Job Duties Assigned by SCS Dispatchers Subject to the Same Controls.

Consistent with the uniform agreements, every driver has the same basic job duties: to pick up and deliver packages to and from SCS warehouses, customers and airports as assigned by SCS dispatchers, in exchange for a per delivery payment. SAC ¶24; Morton Dec. Exh. 2 ¶¶2, 7, 20. Drivers from across the country testify that the procedure and rules for dispatch and delivery are the same everywhere.

A driver must call in to the SCS dispatcher to put his or her name on the dispatchers' list of available drivers at his or her location, usually a SCS warehouse. *Id.* ¶10. The SCS dispatchers then assign work to each driver at that location in rotation according to when the driver put his or her name on the dispatch list. *See id.* ¶12. One driver is therefore completely replaceable with the next.

---

2004 Contract (*e.g.,* Morton Dec. Exh. 2-5 exhibit A thereto [Sison-CA]) *to* 2005 Contract (*e.g.,* Morton Dec. Exh. 2-26 exhibit A thereto; Morton Dec. Exh. 2-19 exhibit A thereto; Morton Dec. Exh. 2-21 exhibit B thereto).

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CONDITIONAL CLASS CERTIFICATION AND NOTICE AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Case No. 3:08-CV-03182-PJH

Once it is the driver's turn to get an assignment, the dispatcher contacts the driver and gives him or her all the necessary information, including the pick-up location, the drop-off location, the deadline by which pickup or delivery must be made, the flight information if it involves an airport pick-up or delivery, and any special instructions, such as the name of the person with whom to leave the package, for certain types of deliveries. *Id.* ¶12. Nationwide, drivers testify that they have to wait at or near a SCS warehouse to be dispatched to an assignment because, pursuant to company rules, a driver must be at or at least within 15 minutes of the warehouse to be dispatched. *Id.*

The drivers testify that they cannot refuse an assignment when the dispatcher calls, because the consequence of any refusal is that the dispatcher either moves the driver to the bottom of the list or removes the driver from the list completely. *Id.* ¶13. As a practical matter, therefore, drivers cannot turn down assignments and expect to continue to receive dispatches. *Id.* Some drivers testify that managers have told them that if they turn down assignments, they may be terminated. *Id.* Exh. 2-18 ¶13 and 2-19 ¶13.

Drivers nation-wide also testify that they are required to follow certain delivery and dispatch rules. For example, after making a pickup or delivery, they have to provide SCS with information immediately by telephone. *Id.* Exh. 2 ¶14. This is to permit the dispatcher to enter information into UPS' tracking system so that customers can obtain real-time data about their deliveries.

The driver also must leave significant decision-making and customer communication to the dispatcher. *Id.* If the driver is running late making a delivery, he or she has to notify the SCS dispatcher at least 15 minutes prior to the delivery deadline. The drivers cannot call the customers themselves. *Id.* If the dispatcher has instructed a driver to leave a package with one particular person only and the driver cannot find that person, the driver cannot make his or her

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169   FAX: (510) 272-0174

9

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169  FAX: (510) 272-0174

own decision about how to proceed.  Instead, the driver must notify the SCS dispatcher and await further instructions.  *Id.*  If a driver is delivering a package to the airport, and misses the flight the package was scheduled to go out on, the driver cannot make arrangements for alternative transportation.  *Id.*  Again, the driver must notify the dispatcher and wait for further instructions. *Id.*  The company communicates rules such as these in memos directed to all SCS drivers, examples of which are attached to drivers' declarations filed herewith.[10]

While drivers typically have a home SCS warehouse out of which they are usually dispatched, drivers also work out of other SCS warehouses in other cities or even other states.  *Id.* ¶3.  As shown in the drivers' declarations and consistent with SCS' business needs in operating a nation-wide integrated transportation network, the dispatch procedures and job duties of the drivers and controls over their work are the same from one location to the next.  *Id. ¶*9; *e.g., id.* Exh. 2-28 ¶9 (driver transferred from CA to NV and experienced no change in procedures or rules); Exh. 2-26 ¶9 (same for driver who transferred from TX to PA); Exh. 2-16 ¶9 (same for driver who worked in KY, IN, OH, OK and TX).

Drivers also have to meet SCS' personal appearance and behavior standards and use SCS' forms in doing their work, such as the company's bills of lading.  *Id.* Exh. 2¶¶15, 18.  Drivers must obtain a signature from every customer in the designated space.  *Id.*   In addition, while SCS appears to have unilaterally eliminated this requirement recently, drivers nation-wide have had to complete daily paperwork and submit it to SCS.  *Id.* ¶16.  Failure to complete the required paperwork and to submit it on time meant that the driver would not get paid.  *Id.*

Nationwide, drivers do not and cannot charge SCS' customers directly and have no role in collecting money from them or setting or negotiating the rates customers pay for pickup and

---

[10] *See, e.g.,* Morton Dec. Exh. 2-5 exhibits D-J thereto (Millman-CA); Exh. 2-5 exhibits D-F thereto (Sisson-CA); Exh. 2-14 exhibit C thereto (Dowdy-KY); Exh. 2-27 exhibit C thereto (Stickney-MN).

delivery services.  *Id.* ¶17.  These matters are the exclusive province of SCS.  As indicated in the company's advertising materials, SCS itself "offers [customers] a single source to manage your global transportation and freight."  *Id.* Exh. 1 at 2.

### 5.     UPS SCS' Dispatch and Payroll Department are Organized Regionally.

SCS' dispatch and payroll system reflect the nation-wide uniform structure and operation of the company.  SCS's dispatch system is organized so that all dispatch for a multi-state region is done from a single location.  *See id.* Exh. 2-27, exhibit D thereto (SCS map showing regional organization of dispatch).  During nights and weekends, the dispatch location may change and result in dispatch being conducted over an even broader region.  For example, drivers in California were dispatched by dispatchers in southern California on weekdays and by dispatchers in Dallas, Texas during nights and weekends.  *Id.* Exhs. 2-1 through 2-5, 2-8, 2-12, 2-13 and 2-15 ¶¶9.  Drivers in Louisville, Kentucky are dispatched by SCS dispatchers in Chicago, Illinois during weekdays, and by dispatchers in Dallas, Texas during nights and weekends.  *Id.* Exhs. 2-16, 2-24, 2-17 and 2-25 ¶¶9.  Drivers in Florida are dispatched by dispatchers in Atlanta, Georgia during weekdays, and by dispatchers in Dallas, Texas during nights and weekends.  *Id.* Exhs. 2-7, 2-19 and 2-20 ¶¶9.  Drivers in Texas, Minnesota and Nevada are dispatched by dispatchers Dallas, Texas all the time.  *Id.* Exhs. 2-6, 2-9, 2-11, 2-21, 2-27, 2-28 ¶¶9.  No matter the dispatchers' location, the dispatch system for drivers operates in the same manner everywhere.  *See id.* Exh. 2 ¶9.

Further illustrating the uniform nature of the dispatch system itself, drivers testify that in emergencies, dispatch has temporarily moved to other locations even further afield.  For example, a driver from Florida testifies that once when the system went down in the usual dispatch office in Atlanta, Georgia, he and the other drivers at his Orlando, Florida warehouse were temporarily

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169   FAX: (510) 272-0174

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169   FAX: (510) 272-0174

dispatched out of Scottsdale, Arizona. *Id.* Exh. 2-19 ¶9.  On another occasion, they were temporarily dispatched out of Dallas, Texas.  *Id.*  These facts show the nation-wide uniformity of SCS' dispatch operations.

UPS SCS' payroll department for drivers, referred to as the "Audit Department," also serves broad areas of the country, showing the company's uniform handling of driver pay.  For example, the Named Plaintiffs and other drivers in California testify that the Audit Departments where they submitted paperwork to get paid or which they contacted to resolve problems with their pay were located in California and Dallas, Texas.  *See id.* Exh. 2-2, 2-5, 2-8, 2-12 ¶¶16.  Drivers in Minnesota, Kentucky, and Nevada testify that they had to contact the SCS Audit Department in Dallas, Texas also.  *Id.* Exh. 2-16, 2-27 and 2-28 ¶¶21.

> **6.      UPS SCS Pays All Drivers the Same Way and Uniformly Denies All Drivers Compensation for Return Travel, Waiting Time and Overtime.**

Consistent with its centralized payroll system and uniform contracts, UPS SCS pays all drivers the same way.  As indicated in the declarations filed herewith, drivers used to receive paychecks bi-weekly, but now are paid weekly.  *Id.* Exh. 2 ¶19.  The uniform contracts and declarations show that SCS structures all drivers' pay in two principle ways.  Drivers receive (1) a lump-sum amount for deliveries within a certain radius of the pick-up location or (2) an amount per mile for stops outside of that certain radius, calculated by the company based not on the actual miles traveled but on one-way mileage estimated based on the zip codes of the pick-up and delivery locations.  *Id.*; 2004/2005 Contract §6 and Exhibit B; 2001/2002 Contract §3 and Schedule A.  While some pay rates may differ from one region to the next, the pay structure remains the same.  *See* Morton Dec. Exh. 2 ¶19.

Under this uniform structure, SCS's system only calculates mileage one-way, essentially not paying the driver for the second half of the trip.  *Id.*   Also, under UPS SCS nation-wide

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169   FAX: (510) 272-0174

policy, the company provides no compensation at all to drivers for the time they must spend

waiting for dispatch, *id.* ¶10 and pays no overtime compensation when drivers work more than

forty hours in a week. *Id.* ¶22.

> ### 7. SCS Requires All Drivers to Provide a Vehicle and Pay for Their own Gas, Maintenance, Repairs and Insurance.

SCS uniformly requires all of its drivers to provide their own vehicles and to pay for their

own gas,[11] maintenance, repairs and insurance. *Id.* ¶21. UPS SCS does not reimburse drivers for

these amounts, but does reimburse drivers for parking and tolls (one way only), as long as a driver

submits receipts. *Id.*

> ### 8. Drivers Work Full-time for SCS, Often for Many Years, and Depend on SCS for Their Livelihoods.

As shown in the declarations filed herewith, driving for SCS is more than a full-time job.

The Named Plaintiffs and driver declarants testify that they routinely work more than forty hours

a week, and depend on SCS for their livelihood. *Id.* Exh. 2 ¶2. The drivers' relationships with

SCS are long-lasting also, typically spanning many years. *Id.*; *e.g.,* Exhs. 2-1 through 2-5 ¶¶2 (4

to 10 years for Named Plaintiffs) and Exhs. 2-6 to 2-29 ¶¶2 (1 to 19 years for other declarants).

## III.   ARGUMENT

> ### A. The Court Must Apply a "Lenient Standard" and Resolve All Doubts in Plaintiffs' Favor.

Under Section 16(b) of the FLSA, a person may maintain an action on

> behalf of himself … and other employees similarly situated. No employee shall be
> a party plaintiff to any such action unless he gives his consent in writing to become
> such a party and such consent is filed in the court in which the action is brought.
> 29 U.S.C. § 216(b).

Unlike a class action under Rule 23 of the Federal Rules of Civil Procedure, which tolls

the statute of limitations for all class members upon filing and which includes all class members

---

[11] SCS has unilaterally decided to provide drivers with additional money for fuel for some
time periods. Morton Dec. Exh. 2 ¶20.

1  except any who later affirmatively opt-out, in a FLSA collective action, workers must

2  affirmatively opt in to be included in the litigation and the statute of limitations runs for each

3  worker until he or she does so.  *Id.* §§ 216(b), 256.  Thus, in *Hoffman-LaRoche v. Sperling,* the

4  Supreme Court held that early in the litigation, named plaintiffs in collective actions are entitled

5  to discover the identity of all "similarly situated" individuals with potential claims, and to send

6  notices to these potential plaintiffs informing them of the pendency of the lawsuit and their right

7  to opt in by a court-ordered deadline.  439 U.S. at 172-74.

8

9       The purpose of the notice is to alert potentially aggrieved individuals of their rights, toll

10  the statute of limitations on their claims, and provide them a reasonable period of time to decide

11  whether to join the lawsuit.  *Id.* at 172.  This procedure is intended to help vindicate the important

12  statutory rights protected by the FLSA and to further juridical efficiency – both by facilitating the

13  ability of individuals asserting similar claims to adjudicate their rights before a single court at a

14  single time, and by allowing that court to establish a fixed "cut-off" date after which no new

15  individual plaintiffs can join the existing action.  *Id.*

16

17       To determine whether the proposed lead plaintiffs are "similarly situated" to the rest of the

18  putative class for purposes of §216(b), courts in this circuit and the majority of courts nationwide

19  apply a two-step approach.  *Leuthold v. Destination Am., Inc.,* 224 F.R.D. 462, 467 (N.D. Cal.

20  2004) (collecting cases); *Adams v. Inter-Con Sec. Sys.,* 424 F.R.D. 530, 536 (N.D. Cal. 2007);

21  *Aguayo v. Oldenkamp Trucking Co,* Case No. CV F 04-6279 ASI LJO, 2005 WL 2436477, *3-4

22  (E.D. Cal. Oct. 3, 2005); *Wynn v. Nat'l Broadcasting Co.,* 234 F. Supp. 2d 1067, 1082 (C.D. Cal.

23  2002); *Hipp v. Liberty Nat'l Life Ins., Co.,* 252 F.3d 1208, 1219 (11th Cir. 2001).  At the first step,

24  which occurs before discovery is complete, "a movant bears a very light burden in substantiating

25  its allegations" of similar treatment and the court applies a "lenient" standard of review, which

26  "typically results in conditional class certification."  *Beauperthuy v. 24 Hour Fitness USA, Inc.,*

27

28

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169  FAX: (510) 272-0174

14

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CONDITIONAL
CLASS CERTIFICATION AND NOTICE AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF

Case No. 3:08-CV-03182-PJH

Case No. 06-715 SC, 2007 WL 707475, *5 (N.D. Cal. Mar. 6, 2007); *Leuthold,* 224 F.R.D. at 467 (citations omitted).[12]   The second step, which is conducted after discovery is concluded, requires a more careful review of the complete record.   *Id.*

The first step – which is the only step at issue in the instant motion – requires the Court to look at "primarily the pleadings and any affidavits submitted by the parties" to determine whether the "plaintiffs have made substantial allegations that the putative class members were subject to a single illegal policy, plan or decision." *Leuthold,* 224 F.R.D. at 467 (citations omitted); *Adams,* 242 F.R.D. at 536 (citation and quotation marks omitted).   The plaintiffs need merely establish "a colorable basis for their claim that the potential plaintiffs are similarly situated." *Severtson v. Phillips Beverage Co.,* 141 F.R.D. 276, 178-79 (D. Minn. 1991); *accord Beauperthuy,* 2007 WL 707475, at *5.   A "colorable basis" simply means that plaintiffs must "come forward with something more that the mere averments in [their] complaint." *Severtson,* 141 F.R.D. at 279; *e.g., Aguayo,* 2005 WL 2436477, at *4 (complaint and one affidavit sufficient); *Ballaris v. Wacker Siltronic Corp.,* Case No. 00-1627, 2001 WL 1335809 (D. Or. Aug. 24, 2001) (complaint and two affidavits sufficient); *Rees v. Souza's Milk Transp. Co.,* Case No. CVF05000297, 2006 WL 738987, * 4 (E.D. Cal. Mar. 22, 2006) (two declarations sufficient); *Camper v. Home Quality Mgmt., Inc.,* 200 F.R.D. 516, 529 (D. Md. 2000) (four declarations sufficient); *Guzman v. Varco Intern., Inc.,* Case No. Civ.A H-01-4000, 2002 WL 32639237, at *3 (S.D. Tex. May 30, 2002) (three plaintiffs' statements sufficient).[13]   Plaintiffs need not offer proof from every state, location or facility; rather, plaintiffs need only "demonstrate that there existed at least one similarly

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169   FAX: (510) 272-0174

---

[12] This standard "is considerably less stringent than the Rule 23(b)(3) class action standards." *Gieske v. First Horizon Home Loan Corp.,* 408 F. Supp 2d 1164, 1166 (D. Kan. 2006) (citing *Mooney v. Aramco Servs., Co.* 54 F.3d 1207, 1214 (5th Cir. 1995)); *accord Leuthold,* 224 F.R.D. at 466-67.

[13] Indeed, some courts have held that plaintiffs must offer nothing more than bare allegations in the complaint. *Gieske,* 408 F. Supp 2d at 1166 (collecting cases).

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CONDITIONAL
CLASS CERTIFICATION AND NOTICE AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF

Case No. 3:08-CV-03182-PJH

situated person at a facility other than his own." *Adams,* 242 F.R.D. at 537 (citing *Horne v. United Serv. Auto. Ass'n,* 279 F. Supp. 2d 1231, 1236 (M.D. Ala. 2003)).

At this first step, the court should not evaluate the merits of the plaintiffs' claims, *Gieske*, 408 F. Supp. 2d at 1166, and must resolve all factual and credibility disputes in the plaintiffs' favor. *Williams v. Sprint/United Mgmt. Co.,* 222 F.R.D. 483, 485 (D. Kan. 2004) (citing *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995)); *Thiessen v. GE Capital Corp.,* 267 F.3d 1095, 1105 (10th Cir. 2001); *Hipp v. Liberty National,* 252 F.3d 1208, 1216-17 (11th Cir. 2001). The plaintiffs' evidence need not be sufficient to carry the burden of proof at trial. *Aguayo,* 2005 WL 2436477 at *4 (rejecting claim that plaintiffs' affidavits were insufficient because they relied in part on hearsay and lacked foundation); *Beauperthuy,* 2007 WL 707475, at *7 n.5 ("whatever shortcomings Plaintiffs' declarations have in the way of hearsay and foundation, if any, are not relevant to the Court's determination at this stage").

The second step of the analysis occurs after the notice has issued and "[o]nce discovery is complete and the case is ready to be tried." *Leuthold,* 224 F.R.D. at 467. At that point, "the party opposing class certification may move to decertify the class." *Id.* The court then "make[s] a factual determination regarding the propriety and scope of the class" in light of all the evidence in the record, taking into account (1) any "disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendants ...; and (3) fairness and procedural considerations." *Id.* (citations omitted). If the court determines based on the complete factual record that "the plaintiffs are not similarly situated, then the court may decertify the class and dismiss the opt-in plaintiffs without prejudice." *Id.* (citations omitted).

With this motion, Plaintiffs ask the Court to conduct the first step of the analysis only to facilitate initial notice to the class.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CONDITIONAL
CLASS CERTIFICATION AND NOTICE AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF

Case No. 3:08-CV-03182-PJH

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169  FAX: (510) 272-0174

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169   FAX: (510) 272-0174

**B.**     **Plaintiffs Have Amply Meet the Lenient First-Step Conditional Certification Standard.**

Named Plaintiffs and the class they seek to represent are "similarly situated" and easily meet the lenient standard of review at the first step.  As set forth in the pleadings and evidence filed herewith detailing the experiences of the five Named Plaintiffs and twenty-five others, Plaintiffs and all putative class members were uniformly classified as "independent contractors," performed the same basic job duties of package pickup and delivery, were subject to the same rules of dispatch and delivery, and were paid according to the same compensation structure, under which they were denied minimum wages and overtime compensation by company policy.  Any one of these common facts standing alone warrants conditional certification under the lenient *Hoffman LaRoche* standard.  Taken together, they overwhelmingly show that Plaintiffs have met their burden sufficient to order that notice issue to members of the putative class to advise them of and protect their ability to enforce the legal rights protected by the FLSA.

The fact that Plaintiffs and all putative class members share the same "independent contractor" classification – a fact that SCS admits – is reason enough to conditionally certify the class.  *See* Answer to SAC ¶¶3, 8, 37.  Courts have routinely conditionally certified classes where all members shared a common classification, the *bona fides* of which were at issue in the litigation.  *Lewis v. ASAP Land Express, Inc.,* Case No. 07-2226-KHV, 2008 WL 2152049, *1 (D. Kan. May 21, 2008) (uniform classification as independent contractors satisfied "light burden" of proving "single decision, policy or plan"); *Montoya v. S.C.C.P. Painting Contractors, Inc.,* Case No. CCB-07-455, 2008 WL 55114, *3 (D. Md. Feb. 26, 2008) ("potential misclassification of the plaintiffs [as independent contractors] … could be enough for class certification"); *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 198 (S.D.N.Y. 2006) (plaintiff's allegation that employees were misclassified as independent contractors "sufficiently alleged a

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CONDITIONAL CLASS CERTIFICATION AND NOTICE AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**          Case No. 3:08-CV-03182-PJH

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169   FAX: (510) 272-0174

common policy or plan"); *see also Gerlach v. Wells Fargo & Co,* Case No. C 05-0585 CW, 2006 WL 824652, at *3 (N.D. Cal. Mar. 28, 2006) (fact that defendant "uniformly classified" bank managers as exempt weighed in favor of conditional certification of nation-wide class); *Beauperthuy,* 2007 WL 707475, at *7 (fact that defendant "uniformly classified" gym managers as exempt weighed in favor of conditional certification of nation-wide class).  On this basis alone, the Court should conditionally certify the class and order that notice issue.

The fact that the drivers all sign the same contracts and are subject to the same rules of dispatch and delivery is also more than sufficient to satisfy the lenient "similarly situated" requirement at the first step.  The 30 declarations filed herewith show that all drivers have the same primary job duties, consisting of picking up and delivering packages as assigned by a SCS dispatcher.  Indeed, the fungible nature of the drivers shown by SCS' rotational dispatch system, the free movement of drivers from one SCS warehouse to the next and across cities and states and the company's centralized dispatch and payroll organizational structure leave no doubt that SCS drivers nation-wide are similarly situated.  Likewise, the facts that UPS has one uniform website, one uniform advertising campaign, one brand, uses hundreds of thousands of employee drivers in its other divisions and unilaterally sets customer rates and driver wages at SCS, shows that SCS drivers are similarly situated—and employees.

Courts in this circuit have conditionally certified classes based on far less evidence of similarity.  *Gerlach,* 2006 WL 824652, at *3 (conditionally certifying nationwide class of bank managers at multiple branches and in multiple divisions of Wells Fargo Bank because all "share[d] a job description, were uniformly classified … and perform[ed] similar job duties."); *Rees v. Souza's Milk Transp., Co.,* Case No. CVF0500297 AWI LJO, 2006 WL 738987, *4 (E.D. Cal. Mar. 22, 2006) (conditionally certifying class of truck drivers based on allegations and two affidavits indicating that all hauled dairy products to warehouses and retail outlets); *Aguayo,* 2005

WL 2436477, at *4 (conditionally certifying class of truck drivers based on allegations and affidavit of one plaintiff that he and other drivers all hauled milk from dairies to processing plants); *see also Beauperthuy,* 2007 WL 707475, at *7 (conditionally certifying nationwide class of gym managers at different facilities because declarations from eleven indicated they were "denied real management authority in a number of ways"). Here, the evidence at this early stage of the litigation indicates that Plaintiffs' and putative class members' job duties are not merely "similar," they are virtually identical. Indeed, in *Air Couriers*, the same essential facts were found sufficient to establish the employment status of all SCS drivers collectively state-wide for purposes of unemployment compensation. 150 Cal. App. 4th 923.

Finally, the fact that SCS pays Plaintiffs and all putative class members according to the same compensation structure, uniformly denying any compensation for return travel and time waiting for dispatch and uniformly denying all drivers overtime pay, confirms that all drivers nation-wide share common legal claims for minimum wages and overtime compensation under the FLSA. Similarity in compensation structure also satisfies the lenient first-stage standard at issue here. *Allen v. Mcwane,* Case No. Civ.A.2:06-CV-158, 2006 WL 3246531, *3 (E.D. Tex. Nov. 7, 2006) (conditionally certifying class in part because "employees have similar pay structure"); *Rees,* 2006 WL 738987, *4 (conditionally certifying class in part because company policy did not provide for overtime pay); *Beauperthuy,* 2007 WL 707475, at *7 (same); *Champneys v. Ferguson Enterp., Inc.,* Case No. IP 02-535-C, 2003 WL 1562219, *6 (S.D. Ind. Mar. 11, 2003) (conditionally certifying class because employees "performed similar functions and … were compensated in a similar manner," even though "not identical"). Once again, Plaintiffs' evidence shows that the drivers' compensation structure is uniform. It follows, therefore, that Plaintiffs' motion must be granted.

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169 FAX: (510) 272-0174

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CONDITIONAL CLASS CERTIFICATION AND NOTICE AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Case No. 3:08-CV-03182-PJH

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169   FAX: (510) 272-0174

An order directing notice and an opt-in period will protect the interests of all SCS drivers and will facilitate consolidated resolution of minimum wage and overtime claims based on law and facts that are common to all.  Such resolution will avoid the potential proliferation of individual lawsuits that could result in disparate rulings and wasted judicial resources.  For all of these reasons, the Court should conditionally certify the class and allow notice to issue.

### C.   The Court Should Order SCS to Provide Plaintiffs a List of the Names and Addresses of Putative Class Members to Facilitate Notice.

The size of the putative class is large (approximately 1,500 members) and the Named Plaintiffs cannot identify them all without Court-ordered production by SCS.  Early discovery of a mailing list is necessary to facilitate notice.  Courts routinely order such discovery simultaneously with conditional certification in FLSA collective actions and this Court should do so here.  *Hoffman-La Roche,* 493 U.S. at 165; *Dietrich*, 230 F.R.D. at 581; *Gieske,* 2006 WL 75290, at *5.  Thus, in addition to granting Plaintiffs' motion for conditional certification, the Court should order SCS to provide Plaintiffs with a list of all putative class members and their most current, known addresses within 30 days, in Excel format, to effectuate notice under *Hoffman-La Roche* expeditiously and cost-effectively.

### D.   Plaintiffs' Proposed Notice and Opt-In Form Are Fair and Adequate.

Plaintiffs' proposed notice to the class and opt-in form are filed herewith as Exhibit 3 to the Declaration of Eleanor Morton.  They are carefully drafted to mirror notices that other courts in the Northern District of California have approved in other recent FLSA cases.  *See* Plaintiffs' Request for Judicial Notice, filed herewith, Exhibits A-C.  Such a notice and form achieve the ultimate goal of providing employees with accurate and timely notice concerning the pendency of the collective action.[14]

---

[14] Plaintiffs will also seek to meet and confer with SCS about the notice and opt-in form.

20

IV.    **CONCLUSION**

  For the foregoing reasons, the Court should conditionally certify the proposed class of current and former SCS drivers, order SCS to produce a complete class list in Excel format, including names and addresses within 30 days, and approve Plaintiffs' proposed notice and opt-in form filed herewith.

Dated: December 5, 2008     Respectfully submitted,

              LEONARD CARDER, LLP

              By:   /s/ Eleanor Morton
                 ELEANOR MORTON
                 Attorney for the Plaintiffs

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169   FAX: (510) 272-0174

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CONDITIONAL**
**CLASS CERTIFICATION AND NOTICE AND MEMORANDUM OF POINTS**
**AND AUTHORITIES IN SUPPORT THEREOF**       Case No. 3:08-CV-03182-PJH

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169   FAX: (510) 272-0174

## PROOF OF SERVICE

I am a citizen of the United States and am employed in Alameda County.  I am over the age of eighteen (18) years and not a party to the within action.  My business address is 1188 Franklin Street, Suite 201, San Francisco, CA  94109.  On December 5, 2008, I served the following document(s):

1.   **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CONDITIONAL CLASS CERTIFICATION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

2.   **DECLARATION OF ELEANOR MORTION IN SUPPORT OF PLAINTIFFS' MOTION FOR CONDITIONAL CLASS CERTIFICATION AND NOTICE**

3.   **REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF PLAINTIFFS' MOTION FOR CONDITIONAL CLASS CERTIFICATION AND NOTICE,**

4.   **PROPOSED ORDER GRANTING PLAINTIFFS' MOTION FOR CONDITIONAL CLASS CERTIFICATION AND NOTICE**

I electronically filed the foregoing document(s) with the Clerk of Court using the CM/ECF system which automatically sent notification of such filings to the following:

Robert P. Kristoff          bobkristoff@paulhastings.com, crystalking@paulhastings.com, helendevol@paulhastings.com

Michael M. Pfyl            michaelpfyl@paulhastings.com, alicebrown@paulhastings.com

Zachary P. Hutton         zacharyhutton@paulhastings.com, jeffsmith@paulhastings.com

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed at San Francisco, California on December 5, 2008.

_____
Angela Ahn