UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PAULA LABRIE, et al.,

        Plaintiffs,

   v.

UPS SUPPLY CHAIN SOLUTIONS, INC.,

        Defendant.
_____/

No. C 08-3182 PJH

**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CONDITIONAL COLLECTIVE ACTION CERTIFICATION AND NOTICE; AND GRANTING MOTION TO EXCLUDE**

Before the court is plaintiffs Paula Labrie, Alfredo Macias, Peter Millman, Tom Chortabtim and Raf Sison's (collectively "plaintiffs") Motion for Conditional Class Certification and Notice, seeking an order conditionally certifying this action as a representative collective action pursuant to 29 U.S.C. § 216(b) for alleged violations of the overtime and minimum wage requirements of the Fair Labor Standards Act ("FLSA"), authorizing notice of this action to issue to the prospective collective action members, requiring defendant to produce a complete class list to facilitate the issuance of notice, and approving their proposed notice and opt-in form.[1]  Defendant UPS Supply Chain Solutions, Inc. ("SCS") opposes the motion and objects to the proposed notice prepared by plaintiffs. Also before the court is plaintiffs' Motion to Exclude, which SCS opposes.[2]  These matters

---

[1] Although plaintiffs have titled this motion as a "Motion for Conditional Class Certification and Notice," the court will construe it as a Motion for Conditional Collective Action Certification and Notice insofar as it seeks to certify a FLSA collective action pursuant to § 216(b), not a class action pursuant to Rule 23.

[2] Although plaintiffs e-filed this motion as a "Motion to Strike," the court will construe it as a Motion to Exclude insofar as plaintiffs titled this motion as a "Motion to Exclude" and because this motion requests that the court exclude or disregard certain evidence offered by SCS in opposition to plaintiffs' Motion for Conditional Collective Action Certification.

came on for hearing before this court on March 18, 2009.  Plaintiffs appeared through their counsel, Eleanor Morton.  SCS appeared through its counsel, Robert Kristoff.  Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the court hereby GRANTS in part and DENIES in part plaintiffs' Motion for Conditional Collective Action Certification and Notice, and GRANTS plaintiffs' Motion to Exclude, for the reasons stated below.

## BACKGROUND

This is an employment wage and hour case.  Plaintiffs are former employees of defendant SCS.  Second Amended Complaint ("SAC") ¶ 8.  SCS is a specialized business unit within United Parcel Services, Inc. ("UPS Brown"), which provides expedited pick-up and delivery services for business customers, using a single integrated nationwide network of transportation, sortation and communication facilities.  Id. ¶¶ 3, 23.  SCS is a sister company to UPS Brown, the package and delivery company, and operates a logistics business.  Jackie Seguerra Decl. ¶ 4.  SCS is a fully integrated logistics company that manages other companies' supply chains, i.e., inventories, from the assembly line to the customers' locations, and does everything related to moving and storing goods for its customers around the world.  Id. ¶ 5.  In short, SCS provides an integrated global network of logistics, consulting, international trade, warehousing, and transportation services.  Id. ¶ 7.

Plaintiffs were formerly employed by SCS as "independent contractor" drivers ("drivers") in California during the relevant time frame.  SAC ¶¶ 4, 8.  As drivers, plaintiffs were tasked with timely delivering and picking up packages at times and locations determined by SCS, and at rates determined solely by SCS.  Id. ¶¶ 4, 24.  Plaintiffs allege that SCS maintains a wide array of written and unwritten policies and procedures that drivers are required to follow.  Id. ¶ 34.  Pursuant to these written agreements, or common unwritten policies and written practices, SCS uniformly purports to classify plaintiffs as "independent contractors."  Id. ¶ 37.  Notwithstanding this designation, however, SCS

requires drivers to perform in accordance with the terms and conditions imposed by SCS, and SCS exercises a high degree of control over drivers. See id. ¶¶ 24-34, 37.

On behalf of themselves and other members of a class similarly situated, plaintiffs allege that SCS has misclassified plaintiffs as "independent contractors" and, in doing so, has unlawfully deprived plaintiffs of the rights and protections guaranteed by the FLSA and California law. SAC ¶¶ 3, 6-7. To that end, plaintiffs filed suit against SCS on July 2, 2008. The essence of plaintiffs' FLSA claims is that SCS failed to pay drivers minimum wages and overtime compensation as required under the FLSA. Plaintiffs maintain that SCS sought to avoid its obligations under the FLSA by labeling its workers as "independent contractors."

On October 27, 2008, plaintiffs filed a second amended complaint, alleging the following claims for relief: (1) failure to pay minimum wages and overtime compensation in violation of the FLSA, 29 U.S.C. §§ 206-07, 216, 255(a); (2) failure to pay minimum wages and overtime compensation in violation of the California Labor Code §§ 510, 1194 and IWC Wage Order 9-2001; (3) failure to reimburse expenditures in violation of the California Labor Code § 2802; (4) failure to compensate for reporting time under the IWC's Wage Order 9-2001 § 5; (5) failure to pay all compensation due and owing upon termination in violation of the California Labor Code §§ 201-03; (6) unfair business practices under Cal. Bus. & Prof.Code § 17200 *et seq*; and (7) failure to pay wages required by law and to reimburse expenditures in violation of California Labor Code § 2699 *et seq*. SAC ¶¶ 41-72.

On December 5, 2008, plaintiffs moved this court for an order: (1) conditionally certifying their first claim for relief as a FLSA collective action pursuant to § 216(b); (2) allowing notice to issue to the class; (3) requiring SCS to produce a complete class list to facilitate the issuance of notice; and (4) approving their proposed notice and opt-in form. SCS filed an opposition on January 21, 2009. A reply was filed on January 28, 2009. On that same day, plaintiffs filed a Motion to Exclude. On February 25, 2009 SCS filed an opposition. A reply was filed on March 4, 2009.

**DISCUSSION**

Plaintiffs move the court to conditionally certify this action as a FLSA collective action so that notice may be sent to similarly situated potential plaintiffs. Plaintiffs allege that there are approximately 1,500 similarly situated individuals in addition to the approximately 146 current or former drivers who have already expressed their desire to join the collective action by filing consent forms in which they consented to "opt in" to the collective action, and that plaintiffs cannot identify all the potential plaintiffs without court-ordered production by SCS. Plaintiffs propose certification of the following opt-in class:

> All persons in the United States who perform or performed delivery services for Defendant UPS Supply Chain Solutions, or for its predecessor entities, as purported "independent contractors" and who file written Consents to Become Party Plaintiffs in this Action, for the period commencing three years prior to filing of such Consents.

Plaintiffs also move for an order excluding or disregarding the declaration and expert report of E. Deborah Jay, C.E.O. of Field Research Group. Specifically, plaintiffs request that the court exclude or disregard the results of a nationwide telephone survey of SCS drivers.

A.  Conditional Collective Action Certification

1.  Standard

Under the FLSA, an employee may bring a collective action on behalf of "similarly situated" employees based on their employer's alleged violations of the FLSA. 29 U.S.C. § 216(b); Does I thru XXIII v. Advanced Textile Corp., 214 F.3d 1058, 1064 (9th Cir. 2000). Any employee "similarly situated" to the plaintiff must give "consent in writing to become a party plaintiff to [the] action." 29 U.S.C. § 216(b); Advanced Textile Corp., 214 F.3d at 1064.[3] To facilitate this process, a district court may authorize the named plaintiffs in a FLSA collective action to send notice to all potential plaintiffs, and may set a deadline for

---

[3] Potential plaintiffs who do not opt in are not bound by the judgment and may bring a subsequent private action. Leuthold v. Destination America, Inc., 224 F.R.D. 462, 466 (N.D. Cal. 2004) (citing EEOC v. Pan Am. World Airways, Inc., 897 F.2d 1499, 1508 n. 11 (9th Cir. 1990)).

4

plaintiffs to join the suit by filing consents to sue. Advanced Textile Corp., 214 F.3d at 1064 (citing Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 169, 172 (1989) ("Hoffmann-La Roche")).[4]

Determining whether a collective action is appropriate is within the discretion of the district court. Adams v. Inter-Con Sec. Sys., 242 F.R.D. 530, 535 (N.D. Cal. 2007) (citing Leuthold, 224 F.R.D. at 466). The plaintiff bears the burden of showing that the putative collective action members are similarly situated for purposes of § 216(b). Adams, 242 F.R.D. at 535-36; Leuthold, 224 F.R.D. at 466; see also Romero v. Producers Dairy Foods, Inc., 235 F.R.D. 474, 481 (E.D. Cal. 2006). Neither the FLSA nor the Ninth Circuit have defined "similarly situated." Adams, 242 F.R.D. at 536; Leuthold, 224 F.R.D. at 466. District courts have taken three different approaches in interpreting the term "similarly situated" for purposes of section 216(b): "(1) a two-tiered case-by-case approach, (2) the incorporation of the requirements of Rule 23 of the current Federal Rules of Civil Procedure, or (3) the incorporation of the requirements of the pre-1966 version of Rule 23 for 'spurious' class actions." Romero, 235 F.R.D. at 481. However, the majority of courts, including courts in the Northern District, see, e.g., In re Wells Fargo Home Mortg. Overtime Pay Litigation, 527 F.Supp.2d 1053, 1070 (N.D. Cal. 2007), Adams, 242 F.R.D. at 536, Leuthold, 224 F.R.D. at 466, and several circuit courts, see, e.g., Thiessen v. Gen. Elec. Capital Corp., 267 F.3d 1095, 1102-03 (10th Cir. 2001); Hipp v. Liberty Nat. Life. Ins. Co., 252 F.3d 1208, 1219 (11th Cir. 2001); Mooney v. Aramco Serv. Co., 54 F.3d 1207, 1213-14 (5th Cir.1995), *overruled on other grounds by* Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003), have utilized the "two-tiered approach." This court elects to follow the two-tiered approach adopted by the majority of courts.

Under the two-tiered approach, a district court makes two determinations. Leuthold,

---

[4] Hoffmann-La Roche addressed a collective action brought under the Age Discrimination in Employment Act, which, the Court recognized, incorporates § 16(b) of the FLSA. Hoffmann-La Roche, 493 U.S. at 170.

5

224 F.R.D. at 467. In the first step, the court considers whether plaintiffs are similarly situated, determining whether a collective action should be certified for the purpose of sending notice of the action to potential class members. Id. This decision is based on the pleadings and affidavits submitted by the parties. Id. This step is characterized by a fairly lenient standard, necessitated by the fact that not all discovery will have been completed at the time of the motion, and certification is generally granted. Id. At the first stage, district courts have held that conditional certification requires only that " 'plaintiffs make substantial allegations that the putative class members were subject to a single illegal policy, plan or decision.' " Adams, 242 F.R.D. at 536 (citing Leuthold, 224 F.R.D. at 468); Sperling v. Hoffmann-La Roche, Inc., 118 F.R.D. 392, 406 (D.N.J. 1988); see also Thiessen, 267 F.3d at 1102.

"Under this lenient standard, 'the plaintiffs must show that there is some factual basis beyond the mere averments in their complaint for the class allegations.' " Adams, 242 F.R.D. at 536; see also Leuthold, 224 F.R.D. at 468 (at stage one of the analysis, courts usually rely only on the pleadings and any affidavits that have been submitted). "Plaintiff need not show that his position is or was identical to the putative class members' positions; a class may be certified under the FLSA if the named plaintiff can show that his position was or is similar to those of the absent class members." Edwards v. City of Long Beach, 467 F.Supp.2d 986, 990 (C.D. Cal. 2006); see also Grayson v. K Mart Corp., 79 F.3d 1086, 1096 (11th Cir. 1996) (To satisfy the "similarly situated" requirement, "plaintiffs need show only that their positions are similar, not identical, to the positions held by the putative class members."); Holbrook v. Smith & Hawken, Ltd., 246 F.R.D. 103, 105 (D.Conn. 2007) (in order for a plaintiff to meet their burden of fulfilling the similarly situated standard, the district court need only be satisfied that there is a basis to conclude that questions common to a potential group of plaintiffs would predominate a determination of the merits).

In the second step, once discovery is complete and the case is ready to be tried, the

6

court engages in a more stringent inquiry into the propriety and scope of the collective action, generally triggered by defendant's motion to decertify the class. Leuthold, 224 F.R.D. at 467. At the second stage, the court may consider the following factors: "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendants with respect to the individual plaintiffs; and (3) fairness and procedural considerations." Id. If the court finds that the plaintiffs are not similarly situated at this step, "the court may decertify the class and dismiss opt-in plaintiffs without prejudice." Id.

Because discovery has not yet been completed and this case is not ready for trial, the court will evaluate FLSA certification based on the lenient first tier analysis. That is, the court will only make an initial determination of whether plaintiffs are similarly situated such that a collective action should be conditionally certified for the purpose of sending notice of the action to potential plaintiffs.

        2.       Analysis

Applying the lenient standard applicable at the first step, the court finds that conditional certification of a FLSA collective action is warranted. Plaintiffs have made a sufficient threshold showing that other current and former SCS drivers classified as "independent contractors" are "similarly situated" with respect to the FLSA violations alleged in the SAC. Plaintiffs have asserted in the SAC and in numerous declarations that SCS failed to pay its drivers the minimum wages and overtime compensation to which they are entitled under the FLSA. In the SAC, plaintiffs allege that other former and current drivers of SCS classified as "independent contractors" are similarly situated to themselves in that they are subject to substantially similar job requirements and pay provisions, as well as the same allegedly illegal company policy or practice; namely, SCS's failure to pay minimum wages and overtime compensation as required by the FLSA.

In support of their assertion that their experiences are shared by the members of the proposed collective action, plaintiffs submitted their own declarations, as well as the

declarations of twenty-five other drivers employed by SCS at different locations throughout the United States. All thirty individuals attest that they are former or current drivers for SCS, that they have provided pick-up and delivery services for SCS and its customers, and have regularly and consistently worked more than 8 hours per day and 40 hours per week, but have never received overtime compensation or compensation for time waiting for an assignment. See, e.g., Paula Labrie ("Labrie") Decl. ¶¶ 2, 10, 22.[5] All thirty individuals also attest that SCS classified them as "independent contractors" and required them to sign independent contractor agreements before commencing delivery services for SCS. Id. ¶ 6. All thirty individuals further attest that SCS exercised a high degree of control over them by requiring them to pick-up and deliver packages as assigned and directed by SCS dispatchers, to work according to SCS instructions and rules regarding dispatch delivery, pay, appearance and behavior, and by prohibiting them from charging SCS customers directly or to have any role in collecting money from customers or in setting or negotiating the rates customers pay for services. Id. ¶¶ 7-18.

Finally, each individual attests that SCS sets all pay rates, based on a uniform pay structure as set forth in an agreement that they were required to sign (either lump-sum amount for deliveries within a certain radius of the pick-up location or an amount per mile for deliveries outside a certain radius, calculated by SCS based not on actual miles traveled, but on one-way mileage estimates based on the zip codes of the pick-up and delivery locations), and that SCS required them to provide their own vehicles and pay for gas, maintenance, repairs and insurance. Labrie Decl. ¶¶ 19-21.

SCS opposes conditional certification on the ground that plaintiffs have failed to demonstrate that members of the proposed collective action are "similarly situated."[6]

---

[5] Because SCS acknowledges that all thirty declarations "are identical in nearly every respect, save the declarant's name," the court, for purposes of convenience, will refer to the declarations collectively rather than refer to each declaration individually.

[6] The court notes that SCS refers to plaintiffs as "couriers" and that the contract refers to them as "contractors." For purposes of consistency with the SAC, and because SCS has not articulated a persuasive reason why plaintiffs should be referred to as "couriers" as

8

Specifically, SCS argues that plaintiffs have not met their burden because: (1) the determination of whether an individual is properly classified as an independent contractor is an inherently fact-specific inquiry that is not prone to group adjudication because it requires detailed, individualized proof of the employment relationship of approximately 2,500 drivers who worked in 45 states with over 200 dispatchers; (2) plaintiffs have not demonstrated the existence of an unlawful policy or practice insofar as their claims are based on exceptions to SCS's policies and practices, where dispatchers allegedly overstepped their authority and exercised more control over the drivers than the drivers' contracts and SCS's policies allowed; (3) the nationwide telephone survey of SCS drivers demonstrates that plaintiffs are not similarly situated to other drivers;[7] and (4) plaintiffs have not presented competent evidence to support their motion insofar as the virtually identical, conclusory declarations submitted have no probative value, and plaintiffs have no personal knowledge of the work performed by other drivers nationwide.

      The court finds that SCS's arguments raise issues primarily going to the merits and are more appropriately addressed on a motion to decertify or motion for summary judgment once notice has been given, the deadline to opt-in has passed, and discovery is closed. See Adams, 242 F.R.D. at 539 (declining to evaluate the merits at the conditional certification stage); Leuthold, 224 F.R.D. at 467 (noting that it is only during the second stage analysis that a court reviews "the disparate factual and employment settings of the individual plaintiffs"). At this stage of the litigation, SCS's arguments do not persuade the court that conditional certification is inappropriate.

---

opposed to "drivers," the court will refer to plaintiffs as "drivers."

[7] In support of their opposition, SCS points to a nationwide survey conducted by E. Deborah Jay of nearly 1,000 drivers which purportedly shows that the "pictures painted by [p]laintiffs," if true, are aberrations from the norm." According to SCS, even if plaintiffs could show that some dispatchers exercised more control over drivers than SCS's contracts and policy allowed, there is no evidence to suggest that all, or even a majority, of drivers are similarly situated. Consequently, in order to resolve claims on behalf of drivers throughout the United States, SCS argues that the court will have to engage in highly individualized fact-specific inquiries to determine whether drivers worked with dispatchers who controlled their work in a manner that violated both their contracts and SCS's policy.

9

The court is satisfied that plaintiffs' showing is sufficient under the lenient standard for conditional certification. Plaintiffs have made substantial allegations that potential plaintiffs were subject to a single illegal policy, plan or decision. Plaintiffs have also provided some factual basis to support their allegations that potential plaintiffs are "similarly situated" beyond mere averments in the SAC. The declarations submitted by plaintiffs describe the job duties of drivers, assert that the performance of these duties is controlled by SCS, that drivers are subject to the same or similar polices, regularly work more than 40 hours per week, and that their experiences are common among drivers in the proposed class. See Escobar v. Whiteside Construction Corp., 2008 WL 3915715, *3 (N.D .Cal. 2008) (finding conditional certification warranted based on allegations in complaint and statements in three declarations); Leuthold, 224 F.R.D. at 468 (same).  In fact, as pointed out by plaintiffs, SCS's opposition brief does not dispute, among other things, the substance of the following statements set forth in the declarations submitted by plaintiffs: (1) drivers are uniformly classified by SCS as "independent contractors"; (2) drivers are required to sign the same or similar contracts, setting forth the relationship between SCS and the drivers; (3) drivers perform pick-up and delivery services for SCS and its customers at the direction of SCS dispatchers; (4) drivers regularly and consistently work more than 8 hours per day and 40 hours per week, and are not compensated for overtime, time waiting for assignments, or return travel time; (5) drivers are paid according to a standard formula devised by SCS; and (7) drivers are subject to a nationwide policy with respect to rules for dispatchers in dealing with drivers.

To the extent SCS argues that plaintiffs' declarations are not competent evidence, the court is not persuaded by this argument. SCS presented neither persuasive argument nor citation to controlling authority demonstrating that plaintiffs' declarations are incompetent evidence in the context of a motion for conditional certification under the FLSA. In addition, to the extent that SCS offered the declaration and expert report of E. Deborah Jay for the purpose of demonstrating that conditional certification is inappropriate,

the court finds plaintiffs' objection regarding this evidence to be well-taken. As pointed out by plaintiffs, this evidence should not be considered in evaluating a motion for conditional certification. This evidence is beyond the scope of this court's analysis in a first tier determination insofar as the evidence raises questions going to the merits of whether plaintiffs are sufficiently similarly situated to allow this action to proceed as a FLSA collective action, and is more appropriately considered as part of the court's analysis in a second tier determination on a motion to decertify after conditional certification is granted, notice has been given, the deadline to opt-in has passed, and discovery has closed. See Leuthold, 224 F.R.D. at 467; see also Adams, 242 F.R.D. at 539 (declining to evaluate the merits at the conditional certification stage). Accordingly, the court will disregard this evidence in ruling on the instant motion.

Finally, the court notes that while an inquiry into the merits might be necessary in the future, this does not prevent potential plaintiffs from receiving notice of the pendency of this action. In the event that discovery reveals that this is not a proper case for a FLSA collective action, SCS may move to decertify the class at the close of discovery, then the court may decertify the class and dismiss the opt-in plaintiffs without prejudice. See Leuthold, 224 F.R.D. at 467 ("Should the court determine on the basis of the complete factual record that the plaintiffs are not similarly situated, then the court may decertify the class and dismiss the opt-in plaintiffs without prejudice.").

In sum, the court concludes that plaintiffs have provided enough support to warrant conditional certification of the proposed collective action for purposes of notifying potential members of the pendency of this suit.

B.     Disclosure to Facilitate Notice

Plaintiffs request that the court order SCS to disclose the identities and last-known addresses of potential plaintiffs within thirty (30) days to facilitate notice. SCS does not oppose this request.

"The FLSA requires the court to provide potential plaintiffs 'accurate and timely

11

1  notice concerning the pendency of the collective action, so that they can make informed
2  decisions about whether to participate.' " Adams, 242 F.R.D. at 539 (citing Hoffmann-La
3  Roche, 493 U.S. at 170) (when a collective action is conditionally certified, a district court
4  may permit discovery into the names and addresses of employees who fall into the class
5  description). Authorization of notice serves the legitimate goal of avoiding a multiplicity of
6  duplicative suits and setting cutoff dates to expedite disposition of the action.
7  Hoffmann-LaRoche, 493 U.S. at 172.

The court orders SCS to provide, in Microsoft Excel format, the names, addresses, alternative addresses, e-mail addresses, and telephone numbers of potential plaintiffs to plaintiffs' counsel within thirty (30) days of the date of this order.

C.   Proposed Notice and Opt-In Form

Plaintiffs request that the court approve their proposed notice and opt-in form. See Eleanor Morton Decl., Exh. 3. In support of this request, plaintiffs assert that the proposed notice and opt-in form should be approved because it "mirrors" notices that other courts in the Northern District have approved in other recent FLSA cases. See Pl.'s Req. for Judicial Notice, Exhs. A-C.[8] Plaintiffs maintain that the proposed notice and opt-in form will provide potential plaintiffs with accurate and timely notice concerning the pendency of the collective action. SCS, for its part, argues that the proposed notice is deficient for three reasons. First, SCS argues that the notice could be perceived by a non-lawyer as a judicial endorsement of plaintiffs' claims insofar as the proposed notice includes the undersigned's name and states in bold and italics that a "court authorized this notice." Second, SCS argues that the notice contains a detailed description of plaintiffs' allegations, but only

---

[8] Plaintiffs ask the court to take judicial notice of Exhibits A-C. SCS does not oppose this request. "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b). Pursuant to Fed.R.Evid. 201, a court may take judicial notice of matters of public record such as pleadings and orders in another action. Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001). Accordingly, the court takes judicial notice of these documents.

mentions, as an afterthought, that SCS "denies that it has violated the FLSA." SCS asserts that the notice should contain a more thorough description of SCS's position in this lawsuit. Third, SCS argues that the 120-day time period for response is inappropriately long. SCS requests that the court order a 30-day response period.

The court finds that SCS's objections are, for the most part, well-taken. Plaintiffs' notice includes the name of the undersigned, which SCS argues could be perceived as a judicial endorsement of this action. The court agrees. "In exercising the discretionary authority to oversee the notice-giving process, courts must be scrupulous to respect judicial neutrality. To that end, trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action." Hoffman-La Roche, 493 U.S. at 174. The undersigned's name should be omitted from the notice. However, the statement, in bold and italics, indicating that "A court authorized this notice," may remain. The notice should also include language indicating that the notice and its contents are authorized by the "United States District Court for the Northern District of California." In addition, to the extent that "The Effect of Joining this Lawsuit" section does not include a statement explaining that potential plaintiffs may share in liability for payment of costs if SCS prevails in this action, this language should be included in the notice. This information should be included to provide potential plaintiffs a "fair statement of their rights." See Adams, 242 F.R.D. at 540.

Next, although the "Description of the Lawsuit" section states that SCS "denies that it has violated the FLSA," the court finds this description to be inadequate. Collective action members are entitled to receive "accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." Hoffman-La Roche, 493 U.S. at 170. The description fails to adequately describe that SCS denies any and all liability, including plaintiffs allegations that SCS improperly classified drivers as "independent contractors" and failed to correctly compensate drivers for minimum wages and overtime compensation under the FLSA. Finally, while plaintiffs' 120-day time period for response is too long, SCS's 30-day time period for response is too

short. The court finds that a 60-day time limit is sufficient.

As to the opt-in form, the court finds that it should contain additional information. First, the form should indicate that the potential plaintiff works or worked for SCS as a driver during the past three years. Second, the form should indicate that the potential plaintiff chooses to be represented by the named plaintiffs and their counsel, Leonard Carder, LLP. Third, the form should indicate that the potential plaintiff agrees to be bound by any adjudication or settlement of the action, whether favorable or unfavorable, and that the potential plaintiff agrees to be bound by the decisions and agreements entered into by the named plaintiffs and their counsel. Fourth, the form should include a blank space for potential plaintiffs to provide the dates they worked for SCS and their work location(s). Fifth, the form should include blank spaces for potential plaintiffs to provide contact information, including their address, e-mail address and phone number.

## CONCLUSION

For the reasons stated above, the court hereby GRANTS in part and DENIES in part plaintiffs' Motion for Conditional Collective Action Certification and Notice, and GRANTS plaintiffs' Motion to Exclude. The court finds that this action is appropriate for certification as a FLSA collective action under § 216(b), and authorizes plaintiffs to send notice to prospective collective action members; however, the court does not approve the notice and opt-in form prepared by plaintiffs. The court further ORDERS as follows:

1. Plaintiffs' first claim for relief shall proceed as a FLSA conditional collective action under § 216(b), on behalf of all current or former drivers who worked for UPS Supply Chain Solutions, Inc., or its predecessor companies, in any state in the United States, as an "independent contractor," at any time within the last three (3) years.

2. SCS shall provide, in Microsoft Excel format, the names, addresses, alternative addresses, e-mail addresses, and telephone numbers of potential plaintiffs to plaintiffs'

14

counsel within thirty (30) days of the date of this Order.

3. The parties shall meet and confer and shall submit no later than ten (10) days from the date of this Order a Joint Proposed Notice and a Proposed Consent to Join form in compliance with this Order.

**IT IS SO ORDERED.**

Date: March 18, 2009

_____
PHYLLIS J. HAMILTON
United States District Judge