# Exhibit 2

## About NELP

The National Employment Law Project (NELP) is a 501(c)(3) nonprofit organization that works to deliver on our nation's promise of economic opportunity. With a staff of lawyers, policy experts and social scientists, NELP partners with community groups, advocates and public officials to promote policies that expand access to good jobs for working families. Headquartered in New York City, NELP has offices in the Midwest, West Coast and Washington, D.C. For more information, please visit our website at www.nelp.org.

Because of NELP's leadership in the wage enforcement field, we have been recognized by courts as an appropriate recipient of *cy pres* awards, based on the generous recommendations of firms such as Outten & Golden and Shen & Associates.

*Cy pres* awards to NELP will be gratefully acknowledged on the website of our National Wage & Hour Clearinghouse (www.just-pay.org) and in written materials.

For more information on how you can name NELP as a *cy pres* beneficiary, please contact Cathy Ruckelshaus at 212-285-3025 x306, cruckelshaus@nelp.org or Laura Moskowitz at 510-663-5705, lmoskowitz@nelp.org.




**NELP**
National Employment Law Project

75 Maiden Lane
Suite 601
New York, NY 10038
www.nelp.org

## Help Promote Fair Pay After Your Case Is Over:

**Name the National Employment Law Project as a Recipient of Your Next *Cy Pres* Award**





## Cy Pres Awards: Using Unclaimed Funds to Promote Fair Pay

In wage and hour class and collective actions, after underpaid employees are compensated, there are often remaining funds that cannot be distributed to the affected workers. In such circumstances, counsel may recommend that the residual funds be contributed to a nonprofit organization that works to address the type of problem faced by the workers in the case. Because such grants can help vindicate the affected workers' rights in the future, they have been recognized by state and federal courts as an appropriate "next best" or "*cy pres*" use for unclaimed funds.



## The National Employment Law Project: A Natural Choice for *Cy Pres* Awards in Wage and Hour Cases



For nearly 40 years, the National Employment Law Project (NELP) has been a leader in advocating for working families' right to fair pay. Because NELP works across the United States to strengthen wage and hour protections and improve their enforcement, contributions to NELP of *cy pres* funds are a good way to support the goals of wage and hour actions. NELP's work in this area includes:

- **Building a strong wage enforcement community** with our new *National Wage & Hour Clearinghouse* (www.just-pay.org) – a web-based resource to help plaintiffs' litigators, community groups and other advocates share model pleadings, practice pointers and news about wage and hour enforcement.

- **Strengthening government wage enforcement** by working with state and federal labor departments and attorneys general.

- **Helping raise the minimum wage** and close loopholes that deny basic protections to vulnerable workers.

- **Fighting illegal misclassification** of employees as "independent contractors" by employers attempting to sidestep their responsibilities.

- **Assisting counsel in strategic wage and hour litigation** involving problem industries and key issues such as employee misclassification and the rights of immigrant workers.

- **Supporting wage campaigns** by worker centers and unions with technical assistance, legislative and policy models, and litigation support.





# CALIFORNIA RURAL LEGAL ASSISTANCE, INC.



## FIGHTING FOR JUSTICE, CHANGING LIVES.

### OUR MISSION

To provide high-quality legal services that will improve the quality of life for low-income individuals and their rural communities.

### WHO WE SERVE

CRLA serves low-income individuals residing in over 22 California counties. As rural areas and small cities of California continue to change, so does our outreach and service to diverse communities. Today, CRLA serves a wide array of clients, while maintaining specialized programs that focus on services for farmworker populations. CRLA clients also include individuals with disabilities, immigrant populations, school children, lesbian/gay/bisexual and transgender populations, seniors and individuals with limited English proficiency.

### HOW WE FIGHT FOR JUSTICE

CRLA reaches over 39,000 individuals a year through a combination of advocacy strategies that: 1) increase access to high-quality, no-cost legal services; 2) ensure the equitable and fair distribution of resources in rural communities; and 3) protect the rights of low-income individuals to seek justice under the law.

### OUR WORK

CRLA legal services are shaped by the needs of our diverse client community. Through a state-wide network of 21 offices, our staff conducts litigation, outreach and legal education on the most pressing issues facing low-income communities: housing; employment; education; workplace safety; discrimination; income maintenance and healthcare access. CRLA provides legal services in conjunction with a series of innovative programs and special initiatives. Strategically designed programs and initiatives allow CRLA to address recurring, wide-spread problems that we have identified through emergent patterns in our individual client cases. CRLA has developed initiatives that deal with many complex and persistent problems for rural communities: protecting the health and safety of farmworkers; guaranteeing that workers receive proper wages; protecting individuals from predatory lending; fighting for communities that lack basic infrastructure; advocating for indigenous Mexican farmworkers; providing education and training to prevent sexual harassment in the workplace; enforcing fair housing practices; supporting victims of domestic violence; guaranteeing the rights of children to a quality education; and increasing access to healthcare among California's low-income families.

CRLA 631 Howard Street, Suite 300 San Francisco, CA 94105 | 415.777.2752                              **www.crla.org**



# CALIFORNIA RURAL LEGAL ASSISTANCE, INC.

## ACCOMPLISHMENTS

CRLA has utilized litigation and strategic programming to help thousands of individuals, families, and communities seek justice. Here are just some of the highlights from our 43 years of advocacy:

**2008** – Promoting healthier rural communities through an appellate court victory, which mandated that the State of California adopt a more protective regulation on pesticide exposure.

**2000** – Securing a $21 million settlement on behalf of low-income, Latino farmworker families facing housing discrimination and forced eviction from the only affordable housing offered in Riverside County.

**1990** – Restoring $20 million in cuts to funding for family planning and health care services for poor women.

**1986** – Drafting the Special Agricultural Worker provision of the new Immigration Act, and legalizing one million undocumented workers nationwide.

**1973** – Ending discriminatory placement of non-English speaking students in special education.

## SUPPORT CRLA

### Join us in the fight for justice

- **Tell** your friends and family about CRLA.
- **Visit** www.crla.org
- **Sign-up** for our Rural Justice Updates
- **Donate** online or send financial contributions to:
  CALIFORNIA RURAL LEGAL ASSISTANCE
  DEVELOPMENT DEPARTMENT
  631 Howard Street, Suite 300
  San Francisco, CA 94105

### Get involved

- **Host** a CRLA house party or office luncheon
- **Sponsor** a local CRLA fundraising event
- **Volunteer** at one of our local offices
- **Provide** pro bono counsel
- **Underwrite** a CRLA fellowship
- **Contact** development@crla.org to learn more

**501 C(3) STATEMENT**
Your contributions help CRLA provide outreach, community education and no-cost legal services to poor Californians and their families. CRLA is a 501(c)(3) non-profit organization, so your contribution is tax deductible to the fullest extent allowed by law. Please consult your tax preparer for details. CRLA's tax identification number is: 95-2428657.

## CRLA INFO



CHAVEZ & GERTLER LLP
MARK A. CHAVEZ (Bar No. 90858)
KIM E. CARD (Bar No. 147779)
ARIANA MOHIT (Bar No. 211407)
42 Miller Avenue
Mill Valley, California 94941
Telephone: (415) 381-5599
Facsimile: (415) 381-5572

LAW OFFICE OF WILLIAM E. KENNEDY
WILLIAM E. KENNEDY (Bar No. 158214)
2797 Park Avenue, Suite 201
Santa Clara, California 95050
Telephone: (408) 241-1000

Attorneys for Plaintiff
GEORGE VAN ETTA
and the Settlement Class

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF ALAMEDA

| | |
|---|---|
| GEORGE VAN ETTA, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CAPITAL ONE AUTO FINANCE, INC. and Does 1 through 20, inclusive,<br><br>Defendant. | Case No.: RG04182823<br><br>**CLASS ACTION**<br><br>**DECLARATION OF BRAD SELIGMAN ON REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FOR AWARD OF ATTORNEYS' FEES, COSTS AND EXPENSES**<br><br>Hearing<br>Date:    May 24, 2006<br>Time:    10:00 a.m.<br>Dept:    22<br>Judge:   Hon. Ronald M. Sabraw<br><br>Complaint Filed: October 29, 2004 |

I, Brad Seligman do hereby declare as follows:

1. I make this declaration of my own personal knowledge and could testify thereto if called as a witness.

2. I am the Executive Director of The Impact Fund, a 501(c) (3) non-profit charitable public foundation. The Impact Fund has been in operation for 13 years. It is headquartered in Berkeley, California. The mission of The Impact Fund is to support complex public interest litigation. We do this through a grant program to fund out-of-pocket expenses in such cases, a training and consultation program for attorneys who bring such cases, a research program (the Discrimination Research Center), amicus representation and direct litigation. Our area of expertise is complex litigation.

3. We are governed by a Board of Directors, and a Board of Advisors, that represents leading civil rights and legal services lawyers in California. A list of our Directors and Advisors is attached hereto as Exhibit 1. Contrary to the suggestion in the opposition brief, we are neither controlled by, nor subservient to, any other group, including trial lawyers.

4. As a grantor, we have granted over $4 million to more than 200 non-profit and private firms, including a number of Legal Services Projects and Support Centers in California. These grants cover out-of-pocket expenses such as discovery costs and experts, in large-scale complex litigation. Grantees have included legal aid organizations and other groups that focus their work on legal issues faced by the indigent. We have funded a broad variety of cases, including poverty law cases (i.e., welfare and Medicaid issues), consumer rights (i.e., predatory or discriminatory lending practices), and civil rights and environmental justice cases.

5. A major focus of our work is to provide technical assistance in the form of advice, counseling, research and assistance. Often this will simply be responding to calls from legal aid lawyers who need help working through a problem or preparing a brief. Or the

1

DECLARATION OF BRAD SELIGMAN ON REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FOR AWARD OF ATTORNEYS' FEES, COSTS AND EXPENSES, CASE NO.: RG04182823

work can be more in depth—assistance in writing a brief, or even arguing a motion or participating in settlement conferences.

6. We regularly put on training programs, which are offered either for free or at very low-cost (no more than the cost of printing materials) to non-profit legal aid organizations. Recent trainings have covered California and federal class action law, expert witnesses, and effective litigation skills such as brief writing. We regularly participate in "traveling trainings" across the state offered to legal aid organizations.

7. We also regularly represent legal aid and civil rights organizations as amicus in cases of importance. Thus, for example, earlier this year, I argued before the California Supreme Court on behalf of a large group of non-profit legal organizations, that a Court of Appeals had incorrectly held that nonprofit organizations that offer legal services must register with the State Bar and could only have lawyers on their boards of directors and as members, among other things. The California Supreme Court reversed the Court of Appeal. See *Frye v. Tenderloin Housing Clinic, Inc.*, 38 Cal.4th 23 (2006). Another case in which we acted as amicus counsel (and not as counsel of record as defendant in this case asserts in its Request for Judicial Notice) was *Alch v. Superior Court*, 122 Cal.App.4th 339 (2004), where we represented legal aid groups including the Asian Pacific American Legal Center of Southern California; the Lawyers' Committee for Civil Rights of the San Francisco Bay Area; Legal Aid Society - Employment Law Center; and Public Advocates, Inc.

8. We also engage in direct litigation in a limited number of cases where it serves our charitable goals and mission. All such litigation is approved by our Board of Directors. Any attorneys fees recovered in such litigation by The Impact Fund go to the organization. Thus, for example, I do not receive any share of any fee recovery.

9. We receive funding from a variety of sources, including foundations, donations, attorneys fees, and grants from the California State Bar Association's Legal Services Trust Fund. In addition, as I describe below, we have received numerous *cy pres* awards. No part of our Legal Services Trust Fund grant goes to our direct litigation program.

2

10. For many years, The Impact Fund has been a Qualified Support Center of the California State Bar's Legal Services Trust Fund. The Legal Services Trust Fund distributes funding, sometimes known as IOLTA funds, which are generated from interest on attorney trust accounts. See Bus & Prof Code § 6210 et seq. These funds are distributed to "Qualified" legal services projects, commonly known as legal aid offices, and their support centers which must meet statutory criteria. A Qualified Legal Services Project is a "non-profit organization which provides as its primary function and purpose legal services without charge to indigent persons...." *Id* § 6213. A "Qualified Support Center" is "an incorporated nonprofit legal services center, which has as its primary purpose and function the provision of legal training, legal technical assistance, or advocacy support without charge and which actually provides through an office in California a significant level of legal training, legal technical assistance or advocacy support without charge to qualified legal services projects on a statewide basis in California." *Id* § 6213(b).

11. In order to become a Support Center, we had to apply to the Legal Services Trust Fund, meet its statutory and regulatory criteria, and then, every three years, a majority of the over 100 legal services projects must vote to re-approve us. We must show, on an annual basis, that we have complied with the Trust Fund criteria, submit an independent audit and provide extensive narrative and accounting materials to the Trust Fund. In addition, we are subject to site visits and audits conducted by the Trust Fund staff. A list of the application materials we annually submit to the Trust Fund is attached hereto as Exhibit 2. <u>A central part of the showing we must make on an annual basis, as well as in quarterly budget reports, is that our primary purpose is to provide directly or indirectly as a support center, legal services without charge to indigent persons.</u>

12. Pursuant to our obligations as a Trust Fund Support Center, we regularly provide technical assistance, training, research and advocacy services to California Legal Service Projects. These services have been in conjunction with a broad range of programs offered by these projects, including consumer, civil rights, housing, employment and

3

disability programs. All consultation and advocacy services are provided at no charge to the legal services projects.

13. In recognition of our work, our financial accountability and our charitable mission, we have frequently been the recipient of *cy pres* awards of funds in class action cases. Most recently, for example, we received a $219,788 award in the *Ballard v. Equifax Check Systems, Inc.* cases (E.D. Cal. Civ-S-96-1532 MCE GGH), which was a class action Fair Debt Collection Act case. Attached as Exhibit 3 is the Court's July 12, 2004 order approving this distribution. Over the last 12 years, we have received over 25 *cy pres* awards, in cases as diverse as consumer, employment, civil rights, disability, housing and environmental cases.

14. We are particularly well suited to administer *cy pres* funds. We are subject to detailed oversight and have reporting obligations to the Legal Services Trust Fund as well as to the foundations which give us grants. We are governed by a Board of Directors and Advisors who are highly respected lawyers. We have administered *cy pres* funds from a number of cases for over a decade. We operate with a low overhead, and consequently keep our administrative expenses low. No part of any *cy pres* award that we have received has been allocated to our litigation program, a condition we willingly would submit to if this Court so orders.

15. California Code of Civil Procedure § 384 authorizes *cy pres* awards ("unpaid residuals in class action litigation") to "nonprofit organizations or foundations" that "support projects that will benefit the class or similarly situated persons, or that will promote the law consistent with the objectives and purposes of the underlying cause of action, to child advocacy programs, or to *nonprofit organizations providing civil legal services to the indigent.*" CCP § 384(b) (emphasis added). Section 384 was amended in 2001 to add, in part, the specific language emphasized above. See Stats 2001 c.96 (S.B. 1218 section 2). Since we are a non-profit organization that provides civil legal services to the indigent—indeed we are

4

required to do so as a condition of our designation as a Legal Services Support Center—we qualify under Code of Civil Procedure § 384 as a recipient of unpaid residuals.

16. We also qualify under most of the other provisions of the statute. Our grant, training and advocacy programs all would benefit the class and further the objectives of the underlying causes of action by fostering more effective enforcement of the consumer laws.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 16th day of May, 2006 in Berkeley, California.

DATED: May 16, 2006

/s/
Brad Seligman

5

DECLARATION OF BRAD SELIGMAN ON REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FOR AWARD OF ATTORNEYS' FEES, COSTS AND EXPENSES, CASE NO.: RG04182823